## No. 6528.

E. MARQUEZE & Co. vs. C. O. LEBLANC. SUN MUTUAL INSURANCE COMPANY, GARNISHEES.

A party domiciled out of the jurisdiction of a court may be made a garnishee, under a writ of *attachment*, but not under a writ of *fieri facias* issued by that court. In cases of *fieri facias*, the garnishment process must issue from the court of the garnishee's domicile.

A party may be sued, and judgment rendered for, or against him, by a competent court, other than that of his domicile, if he appear in such court and plead to the merits.

APPEAL from the Fifteenth Judicial District Court, parish of Lafourche. *Beattie*, J.

*Thomas A. Badeaux* and *Isaiah D. Moore*, for plaintiffs and appellants.
*Leovy & Kruttschnitt*, for garnishees.

The opinion of the court was delivered by

DE BLANC, J. The defendant, C. O. Le Blanc, is a resident of the parish of Lafourche. Plaintiff brought suit against him in the court of his residence, and obtained from said court an attachment against his property. Under the impression, as they were, that the Sun Mutual Insurance Company and Herrmann & Vignes, of the city of New Orleans, have in their possession property and effects belonging to their debtor, plaintiff·

had them cited as garnishees, to appear before the court in the parish of Lafourche, and there answer the interrogatories propounded to them.

In obedience to said citation, the garnishees appeared before said court, and, so far as we can judge from the order in which the documents are classed in the transcript, first filed their answer to the interrogatories, and on the same day the Sun Mutual Insurance Company filed an exception declining the jurisdiction of the Lafourche court, on the ground that its domicile is in the city of New Orleans.

If our impression is correct, if we are not mistaken as to the time when and the order in which these answers and exception were filed, the exception can not be maintained, for it followed instead of preceding the only answer which a garnishee is allowed to make. In so doing, the insurance company submitted to and accepted the jurisdiction of the court before which it appeared. C. P., art. 93.

Were it otherwise—had the exception been filed before the answer—would it have sustained the garnishee's pretensions, and justified the dismissal—not of a suit—but of mere interrogatories propounded to that party? We believe not. And why? Because a garnishee is but "a stake-holder, a custodian of the property attached in his hands; he has no pecuniary interest in the matter, no costs to pay, none to save; his business is to let the law take its course between the litigants." 14 An. 373; 18 An. 476. He can not contest or even answer the demand of plaintiff against defendant; he can, legally, answer but the interrogatories propounded to him.

In this case, the insurance company relies on articles 89 and 162 of the Code of Practice, which provide, one, that the defendant—not the garnishee—shall be cited at his domicile; the other, that no domicile shall be elected for the purpose of being sued elsewhere than in the parish of one's residence. Is there in those articles a single expression prohibiting any litigant from submitting to and accepting the jurisdiction of a competent court? The law prohibits nothing more than an agreement entered into, in and by which one consents, in advance and before the institution of a suit, to be sued elsewhere than at the domicile mentioned in the Code. 2 L. R. —; 18 An. 88.

The articles relied upon by appellee do not conflict with or repeal article ninety-three of the Code of Practice, which provides "that if one be cited before a judge whose jurisdiction does not extend to the parish of his domicile or usual residence, but who is competent to decide the cause brought before him, and he pleads to the merits, instead of declining the jurisdiction, the judgment given shall be valid, except defendant be a minor. Did the insurance company appear in the court, the jurisdiction of which is now contested? Did it file its answer in said court? Is and was that court competent? This is not and can not be disputed.

If incorporated in one general provision, articles 89, 162, and 93 could not be made to clash. The first part of the general provision composed of those three articles would establish the general rule that a defendant must be sued at his domicile; the second part would confirm that rule and prohibit any agreement to be sued elsewhere than at said domicile; the third would place it in the power of parties to accept or decline jurisdiction, to waive or enforce a personal privilege, to reduce or multiply litigation. That privilege, however, is one that only defendants can claim and exercise, and does not extend to garnishees, who are but stakeholders and custodians.

If there had been any intention of repealing article ninety-three of the Code of Practice, would it have been retained in the revised edition, and in every edition published since 1861? What was the object of the law amendatory of the one hundred and sixty-second article of the Code of Practice? Was it to protect defendants, to give them a right which then they had not? It was not, for before the adoption of that law they could agree or refuse to be sued out of the parish of their residence? That law did not add to their right, had no reference to them, and was passed to protect the home creditor against the effects of an election of domicile, which had become the invariable condition of nearly every contract entered into beyond the limits of the debtor's parish.

In the case of Charles E. Alter vs. J. B. Pickett, reported in the twenty-fourth Annual, and that of Benjamin L. Harrison vs. Carondelet Street and Carrollton Railroad Company, not yet reported, the court said "that the garnishee is not bound to go beyond the court of his own jurisdiction to answer interrogatories." And why? Because, as under article 642 of the Code of Practice "the seizure of rights and effects can be made but in the parish where they are held, it would seem that the garnishment process should be issued by a court of the same parish." In support of that opinion, they refer to the case of A. Rochereau & Co., 24 An. 311.

In the case there referred to, what were the facts? Plaintiffs sued defendant, a resident of the parish of St. James, in one of the courts of this city, and, from that court, obtained an order of attachment and garnishment. Defendant excepted to the jurisdiction of the New Orleans court, on the ground that he was a resident of the parish of St. James. The lower court decided that it had no jurisdiction of the defendant, but that it had jurisdiction of the property attached. On appeal, the Supreme Court reversed that judgment, dismissed the attachment, and, for so deciding, alleged that the conservatory remedy should have been issued by the court of the debtor's residence.

In another case, the Slaughter-House Company (a corporation created by act of the General Assembly) being cited as a garnishee, filed the ex-

·ception that it was subject to no other jurisdiction but that of the Superior District Court; that, as to it, every other court in the State was divested of jurisdiction. What did this court answer? That may be true as regards original process, but it does not hold when the company is made garnishee. The court which rendered the judgment out of which springs the garnishment process necessarily has jurisdiction over the party made garnishee. 26 An. 531.

Article 250 of the Code of Practice provides "that a garnishee may be made a party to the suit, and be cited to answer interrogatories on facts and articles, either by praying to that effect in the original petition, or by a supplemental petition filed at any stage of the suit previous to judgment. Is it not manifest, from every word of that article, that the process by garnishment is a branch, an incident, a material part of the original suit—a part which one can see and touch—and that the original suit, its incidents, its branches, are subject to one and the same jurisdiction? C. P. 154.

When an attachment is obtained before judgment, to what suit can the garnishee be made a party? Is it to a separate suit to be instituted against him? If so, how vain it was to declare that he can be made a party to a proceeding against him, how extravagant to insist that interrogatories may be attached to the plaintiff's original petition or to a supplement. Why attach them to a petition deposited in the court of defendant's domicile, if they are to be filed, answered, traversed, and passed upon in another jurisdiction and by the court of the garnishee's domicile?

We repeat it, the garnishee is at most a qualified defendant. The articles, therefore, which relate to defendants, to actions against them, do not and can not legally be made to apply to a garnishee. The latter is cited as a witness; he is called upon, not to answer to a demand against him, but merely to disclose whether he has property and effects belonging to the real and only defendant in the case. Judgment, we admit, can be rendered against him, but how and under what circumstances? As a penalty, not otherwise, when he refuses or neglects to answer, or, when answering, he swears falsely, and thereby justifies the presumption that he is in possession of the property attached.

Any other construction would lead to the irrational conclusion that the execution of a judgment may be denied to the court by which it was rendered and confided to every other court in the State, and this in disregard of the article of our Code which provides "that the execution of judgments belongs to the courts by which the causes have been tried in the first instance." C. P. 617.

If the power to execute can be wrested from the court which heard and decided, and transferred to and distributed among the other courts,

Marqueze & Co. vs. LeBlanc.

how and by what criterion determine the jurisdiction in which to pro-- ceed against the garnishee? Shall it be by the amount claimed by plaintiff against defendant, or the amount due by the garnishee to defendant? These difficulties may be avoided by a strict interpretation of the arti-- cles referred to. They are plain and just; they are not repugnant to any existing law; they do not impose on the garnishee any unreasonable burden; he can, without leaving his domicile, answer the interrogatories propounded to him, and—if his answers be honest and true—he has nothing to apprehend, no expense to incur, no costs to pay. Why, then, compel the creditor to resort to a multiplicity of actions, and to often spend more than he can realize?

. It is therefore ordered, adjudged, and decreed that the judgment of the lower court be and it is hereby annulled, avoided, and reversed, and appellee's exception overruled and set aside.

It is further ordered, adjudged, and decreed that this case be remanded to the lower court to be proceeded in according to law, and that appellee, the Sun Mutual Insurance Company, pay the costs of the appeal.

---

### CONCURRING OPINIONS.

MANNING, C. J. A distinction must be made, *quoad* the question of jurisdiction, between the process of garnishment issued after judgment against the original debtor and that issued before judgment. I say *must* be made, because the decisions countenance it, and by such distinction alone can they be harmonized.

In Featherston vs. Compton, 3 An. 380, judgment having been obtained against the defendant at his domicile in Concordia parish, and a writ of *fieri facias* issued to the sheriff of Orleans, plaintiff presented a petition to one of the courts of this city praying garnishment of Kendall, who resided here. Exception made to the jurisdiction of the Orleans court on ground that Concordia court alone could take cognizance of the garnishment. Held—That Orleans court had jurisdiction because it was the domicile of the garnishee.

In Alter vs. Pickett, 24 An. 513, after judgment obtained against Cummings in the court of Orleans, his domicile, the same court issued garnishment process against Pickett, whose domicile was Bossier parish, and rendered judgment against her. Held—That the judgment was null, because the court of her domicile (Bossier) had alone jurisdiction. These two cases, separated by an interval of a quarter of a century, affirm the same doctrine, viz.: that garnishment process, ancillary to the execution of a judgment, must issue from the court of garnishee's domicile, and requires a *fieri facias* to support it. And it has very lately

been repeated in Harrison vs. Carondelet-Street-Railroad Company, decided in November, 1876. Opinion Book 45, p. 584. I am not disposed to depart from a rule that has been the guide of the profession so long.

In Rochereau vs. Guidry, 24 An. 311, the defendant, a resident of St. James parish, was sued in Orleans for rent, and an attachment issued against funds in hands of garnishee in Orleans. Held—That the Orleans court had no jurisdiction, the defendant being amenable alone to the court of his domicile *quoad* the suit for rent, and the attachment, being a conservatory remedy merely, and accessory to the suit, can be issued by no other than the court having jurisdiction of the suit.

In Bradley vs. Woodruff, 26 An. 299, the defendant was a resident of St. Bernard, and was sued in Orleans, on an account for supplies, and a sequestration of cotton, found in Orleans, was made. On exception to the jurisdiction, held—The court of Orleans had no jurisdiction of the suit for supplies against a resident of St. Bernard, and, being without jurisdiction, could not legally make the order of sequestration, incident to the suit.

In Guyol vs. Duggan, *idem*, 529, the defendant's domicile was East Baton Rouge, and he was sued in Orleans on an account for supplies, and his cotton in the latter place was sequestered. The court *ex mero motu* noticed the want of jurisdiction, and held as in the last case.

In Gay vs. Eaton, 27 An. 166, the doctrine of the previous cases is reaffirmed; *i. e.*, whenever the writ of attachment, or other conservatory remedy, is resorted to in aid of the main action, and for the purpose of holding funds or property to answer a judgment not yet obtained, the court of the domicile of the defendant in the main action alone has jurisdiction both of the main action and of its auxiliary conservatory remedy.

This dictum is reconcilable with that of the first three cases above recited. If we hold that process of garnishment must in all cases and under all circumstances issue from the court of the garnishee's domicile, we overrule all of these last-quoted decisions. If we hold that such process must always issue from the court that has jurisdiction of the main action, we overrule the Featherston, Alter, and Harrison cases. In my opinion it is neither necessary nor proper to do either. Nor do I propose to make a new law under the guise of a judicial construction, but merely to harmonize the expositions of law already made. It will be observed these two currents of authorities flow along in parallel beds. There is one other decision, Smith vs. Durbridge, 26 An. 531, in which it is said, the court which rendered the judgment out of which the garnishment process springs necessarily has jurisdiction over the party made garnishee. This is not true in all cases, as Alter's case and its predecessor and successor rule the contrary. It would be more exact

to say, the court which has jurisdiction of the original suit to which the garnishment process is an auxiliary set in motion before judgment necessarily has jurisdiction over the party made garnishee.

The garnishee's counsel contends that the rule is inflexible, that a party must be sued at his domicile, and since 1861 can not even elect to be sued elsewhere, and as Delacroix vs. Hart, 24 An. 141, characterized the garnishment process as a suit, wherein there must be petition and citation, it follows that the garnishee can only be held to answer process from the court of his domicile.

That is the reason why, after judgment obtained, the court of the original suit has not jurisdiction of the garnishment, if it be not the garnishee's domicile. The suit between the original parties is at an end. The judgment terminated it. If the plaintiff then wishes to proceed against a garnishee, he must sue him by petition and citation, and in the court of his domicile. Thus said this court from 1848 to 1876.

But if the process of garnishment is but an accessory to the main action, having its origin at the same time, and serving as an anchor to hold fast the fund or property which will satisfy the judgment until that judgment can be obtained and is ready to be satisfied, then by virtue of the law requiring a defendant to be sued at his domicile the suit must be brought there, and since it is only that court that can hear the suit, so it is only that court that can issue the conservatory remedies that accompany the suit. That is the ruling of this court down to the Gay case in the last Annual.

I therefore concur in the decree reversing the judgment of the lower court and remanding the cause for further proceedings against the garnishee in the district court of Lafourche.

SPENCER, J. I concur in the opinions of Justice DeBlanc and of the Chief Justice.

---

## DISSENTING OPINION.

MARR, J. I see no reason for any distinction in the proceeding in garnishment under a writ of *fieri facias* and under a writ of attachment; and I can not concur in the conclusions of the court.

In garnishment under a *fieri facias* the law is well settled that where the person to be made garnishee resides in a parish different from that in which the judgment has been obtained the writ is directed to the sheriff of the parish in which the garnishee resides; and the judgment creditor applies to the proper court of that parish and causes the citation in garnishment to issue and to be served by the sheriff of that parish. The garnishee files his answers in that court, and all the issues

Marqueze & Co. vs. LeBlanc.

between the garnishee and the judgment creditor are heard and determined in that court. See Featherston vs. Compton, 3 An. 380.

In cases of attachment the writ must be sent to the parish in which the property to be attached is found, and this is true whether real or movable property or some incorporeal right is to be attached. Favrot vs. Delle Piane, 4 An. 584. In this case the attaching creditor desired to attach rights and credits in the parish of Orleans, and he properly prayed for a writ of attachment to be directed to the sheriff of the parish of Orleans; but the citation in garnishment required the garnishees to answer in the parish of Lafourche, where the suit was brought.

It can make no difference that the garnishment in attachment is on mesne process, before judgment, because no judgment can be rendered against the garnishee until judgment has been obtained against the debtor, the defendant in the same action.

The law intends to restrict the jurisdiction of the court *ratione personæ* to the territorial limits of their respective parishes (Rev. C. P., articles 162–229), and the exceptions to this are few, and are defined in articles 163, 164, etc. See, also, Alter vs. Pickett, 24 An., and cases there cited.

It was plainly the intention of the Legislature to deprive the courts of jurisdiction of actions against persons having their domicile in other parishes than that in which each court exercises its powers and functions, and to abolish all distinctions between a court of jurisdiction *ratione materiæ* and *ratione personæ*. In either case the judgment is void, and no consent can give jurisdiction where it does not exist without consent.

As in garnishment under *fieri facias*, so in garnishment under attachment. The writ must be directed to the sheriff of the parish in which the seizure is to be made, and if a garnishee residing in that parish is to be cited, application, in my opinion, must be made to the proper court of that parish, citation in garnishment issued by that court, and served by the sheriff of that parish holding the writ. The garnishee should file his answers in that court, and in that court all the issues and controversy between the seizing creditor and garnishee will be made up and determined.

The creditor will proceed against his debtor in the court having jurisdiction of the main action, the suit between the plaintiff and defendant; and when he has obtained judgment the court of the domicile of the garnishee will pass upon garnishment and condemn the garnishee to pay if his answers and the proceedings in garnishment establish his liability.

In many cases of garnishment there are serious questions to be determined between the garnishee and the seizing creditor, and it would be very inconvenient, vexatious, to require the garnishee to go out of his own parish, it may be to one quite distant, to litigate these questions. In

this very case the answers of the garnishees disclose the fact that a transfer had been made by the defendant and accepted long before the institution of the suit. These answers may be traversed, and it will be necessary before condemning the garnishees to show a state of fact different from that shown by the answers, to attack the alleged transfer and to show that it did not place the right attached beyond the reach of the attachment. This would compel the garnishees to go out of their parish to litigate these issues, and would subject them to all the inconveniences which the law has sought to obviate by requiring suits and proceedings against the citizens of the State to be brought and prosecuted in the courts of the parish in which they have their domicile.

I think the district court of Lafourche was absolutely without jurisdiction as to the garnishees residing in the parish of Orleans, and that this want of jurisdiction *ratione personæ* under the existing law may be shown at any time, and that whenever the objection is made it is equally as fatal as the want of jurisdiction *ratione materiæ*.

---

## ON APPLICATION FOR REHEARING.

The opinion of the court was delivered by

EGAN, J. The interest and importance in practice of the questions raised in this case, which have been again pressed with great earnestness upon the attention of the court in the application for rehearing, have induced us to give it an unusually careful consideration.

It is urged that the garnishee domiciled in New Orleans can not be called to answer before the district court of Lafourche parish, the domicile of the defendant, LeBlanc, from which court the process of garnishment issued in obedience to the prayer of the original petition in the cause. It is also argued that this court has decided that a garnishee under process issued in execution of judgment must be cited to appear and answer before the court of his own domicile, which alone has jurisdiction to hear and adjudge the question of his liability, and that there is no reason for a distinction between proceedings in garnishment *before* and *after* judgment.

Were this suit directly and mainly against the garnishees as principal defendants, the question as to exception of domicile would not bear discussion, since the act of 1861 and the decisions under it and the general provisions of the Code of Practice in regard to jurisdiction *ratione personæ*.within the exceptions to which, enumerated in the Code, we are told that this case does not come. In support of this view we are referred to the case of Delacroix vs. Hart, Barrow, garnishee, 24 An. 141, in which Chief Justice Ludeling, the organ of the court, said: "The gar-

nishment process is certainly a suit; there must be a petition and cita-
tion to get the garnishee before the court, and then follows a judgment
in accordance with the evidence." This case was one of garnishment
*under fieri facias after judgment had terminated the suit between the
original parties.* In other words, like the case of Alter vs. Pickett, re-
ported in the same volume, and the third Annual case referred to, it was
simply a matter of execution of judgment already obtained, in regard to
which the original defendant was entitled to nothing but notice of seiz-
ure, which he could no more contest than he could that of tangible prop-
erty, and where neither petition nor citation were required to be served
on the original defendant. In the case of Elder vs. Rogers, 11 An. 606,
the court held, Mr. Justice Spofford being the organ, that the *judgment*
debtor was not a necessary party, and refused to dismiss the appeal on
motion of the garnishees, for want of citation, to him. The universal
practice in garnishment under *fieri facias* has, it is believed, been in ac-
cordance with this view, and it would seem to be clear that such is the
law governing this as any other mode of executing judgments. Judg-
ment being rendered, the *contestatio lites* is over. You can no longer
after judgment make the garnishee "a party to the suit," as expressly
authorized by the Code of Practice (article 250) "*at any time before
judgment;*" all that can be done is to seize and condemn, in the hands of
the garnishee, the debt due by him to the judgment debtor. This is
done by *fieri facias* issued to and executed in his parish, where the debt,
the thing seized, is found, and there is no reason or propriety in calling
him before another jurisdiction. This would seem to furnish a very
good reason for distinction between proceedings in garnishment before
and after judgment. In the former case the original debtor *is* a neces-
sary party, without judgment first against whom none can go against
the garnishee; in the latter case the original debtor is not a necessary
party to what Judge Ludeling calls "the suit." between the plaintiff and
the garnishee, which has been held, and we think correctly, to be gov-
erned as to the matter of jurisdiction *ratione personæ* by the general
provisions as to domicile, "*cessante ratione cessa ipsa lex.*" It seems to
be conceded that the writ of attachment may lawfully issue from the
court having jurisdiction *ratione personæ* of the principal debtor; but it
is said that the proceedings subsequent to seizure in the hands of the
garnishee must be had before the court of his domicile, and, of course,
must await judgment against the defendant. This is an admission that
the cause is the same, as the attachment is but process in the cause.
This is in direct contravention of article ninety-four of the Code of Prac-
tice, which provides that "the same cause can not be brought before two
separate courts, *though they be possessed of concurrent jurisdiction,* ex-
cept by discontinuing the first suit brought before the answer is filed,"

and that the judge before whom it is first brought shall sustain his jurisdiction, and the defendant may have the cause dismissed by the other court and recover costs.

Again, in the proceeding by attachment and garnishment before judgment the principal defendant is a necessary party, who is entitled to contest and be heard at every stage of the cause, and, besides the great inconvenience and expense in practice of this course of proceeding, we are met at once by the same difficulty of jurisdiction as to the defendant which is here set up by the garnishees as to themselves and without any provision of law to warrant it; i. e., you must require the defendant to appear and contest before the court, not of his jurisdiction, but that of the garnishee. The difficulties in the way of this mode of proceeding are apparent.

In Rochereau vs. Guidry, 24 An. 311, the court below held that it had no jurisdiction of the defendant, because his domicile was in another parish, but that it had jurisdiction of the thing attached, and would hold it subject to the order of the court having jurisdiction of the person of the defendant. The Supreme Court held "that the court which issued the attachment was without jurisdiction *to grant any order* binding on the defendant, because his domicile was in another parish, and that the attachment, being merely a conservatory remedy, should have been issued by the court having jurisdiction of the case."

In Gay vs. Eaton & Barstow, 27 An. 166, the court says : "A court which can not determine *whether or not a debt exists* can not pass on the question of privilege" to secure its payment. This mode of proceeding must be discarded. Now, there are many cases in which persons other than the plaintiff and defendant are parties to a suit "only incidentally and subsidiarily." C. P., article 101. Such are garnishees under attachment against a debtor who has a domicile in the State where the law requires that suit against him shall be brought. The exceptions enumerated in article 163, Code of Practice, relate only to original or rather principal defendants and to jurisdiction in the bringing of ordinary suits against them. The fact that garnishees are not among the exceptions enumerated in that article proves nothing. They come within other provisions of the law, and are treated of in a different section of the Code of Practice, under the head of "attachment in the hands of third persons." In Williams vs. Kimball, 8 N. S. 353, the court held that "an attachment, like all other conservatory acts, is not, when the defendant is personally cited, a mode of bringing suit, but a remedy or *incident* which may precede, accompany, or be subsequent to the action. In the language of the Code, " it may accompany a demand or give effect to a suit which the plaintiff has brought or intends to bring."

In Favrot vs. Delle Piane, 4 An. 586, the 8 N. S. case is reviewed and

Marqueze & Co. vs. LeBlanc.

expressly re-affirmed, and the court says: "Viewed in the light of a conservatory measure incident to the main action, there seems no reason why the jurisdiction of the court for the purposes of attachment where the debtor is personally cited should be confined within its territorial limits."

It has often been adjudged in other classes of cases, and the principle is universally recognized, that courts which have jurisdiction of a cause of *the main action* have, *ex necessitate,* jurisdiction of all its incidents; so it was held under the old parish-judge system in regard to the power of the parish courts to adjudicate incidentally upon land titles.

It is noticeable that all the provisions of the Code of Practice of Louisiana on the subject of attachment are under the head of "*attachment in the hands of third persons,*" the very definition of attachment embraces that language. C. P. 239. The plain and positive provisions of the Code of Practice under that head would seem to settle the question of jurisdiction as to garnishees under attachment beyond dispute, and it would almost seem strange that doubt could ever have existed. Being specific provisions on the subject of attachment, they must of course control more general provisions of the law. By article 246 if a creditor know or suspect that a third person has in his possession property of the defendant, or is indebted to him, "he may make such a person *a party to the suit*" by having him cited to declare on oath what property of the defendant he has in his possession, or in what sum he is indebted to the defendant, and says "the person thus made a party to the suit is termed the garnishee." Article 250 reads: "A garnishee may be made a party to the suit and be cited to answer interrogatories on facts and articles, either by praying to that effect *in the original petition* or by a supplemental petition filed *at any stage of the suit previous to rendering the judgment.*" Article 251 provides for citation to the person thus "made party to the suit." Article 252 provides, "if there be a garnishee made party to the suit, the clerk must deliver or send to the sheriff a copy of the petition and of the interrogatories annexed to it, if there be such, with a summons directed to such garnishee to answer the same within the delay given in ordinary suits." What power or duty has the clerk of one court to summon a person before another, or what power or duty has the judge of one court to order or cause the issuance from his court of a summons to answer before another? How is the judge who orders the attachment to render proper or effective judgment, unless the garnishee and his answers are before him? How can he pass upon any contests of claim or privilege which may arise in the cause, either by intention or otherwise, unless the subject of contest is before him? and we have seen that no other court can (Gay vs. Eaton). Article 256 of the Code of Practice speaks of the garnishee as a "party to the suit."

Marqueze & Co. vs. LeBlanc.

Article 262 requires "the garnishee who has been cited in a suit to put in his answer within the usual delay;" and by article 263 if the garnishee refuse or neglect to answer the interrogatories put to him within the delay of the law, *judgment* shall be rendered against him for the amount claimed, with interest and costs. C. P., article 248, authorizes the creditor, on proper affidavit, to have the garnishee arrested who is about to depart from the State without having filed his answer. The next article, 249, provides for his being discharged from arrest either by giving security or by answering in the presence of the court the interrogatories propounded to him, "and filing such answer in the office of the clerk of the court."

We thus see that the garnishee is directly made a party to the suit, and may be so made either by the original petition or by a supplemental petition; that he is spoken of as "a party to the suit," "*in totidem verbis*," in no less than five articles of the Code of Practice, and so treated of in several others; that he may be cited or summoned to answer by a judge and clerk of a court, who, according to the garnishee in the case at bar, has no jurisdiction over him; that he may be arrested and judgment given condemning him in case of failure or refusal to answer; and yet the court which has all these powers, the court which alone has jurisdiction of the principal defendant, of the main action, has no jurisdiction over one expressly near a party to the suit; a judge may have jurisdiction and sole jurisdiction of a suit, and yet no jurisdiction of a party to it! If no judgment can be rendered by him against the garnishee, how will he cease to be a party? You may make *parties to a suit* for no object or purpose, for, according to the argument, the court in which they are made parties can render no judgment affecting them.

Is not this a *reductio ad absurdum* which demonstrates the unsoundness of the argument against jurisdiction? I was not present, and took no part in the decree in this case, but now express my concurrence in it.

After a careful examination of the arguments and authorities cited in the application for rehearing, and for the reasons given herein and in the opinions of the majority of the court, the rehearing asked for is refused.